This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**WAYNE SOWELL, ROSE MARIE LAW,**
**KENNETH BORREGO, and KATHLEEN**
**O'DEA,**

Petitioners-Appellees,

v.                                                                    NO.  33,155

**MARCELINA MARTINEZ,**

Respondent-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Francis J. Mathew, District Judge**

Montgomery & Andrews, PA
Dakotah Benjamin
Santa Fe, NM

for Appellees

Marcelina Martinez
Santa Cruz, NM

Pro Se Appellant

**MEMORANDUM OPINION**

**KENNEDY, Chief Judge.**

**{1}** Marcelina Martinez (Respondent) appeals from a district court order declaring her commercial lien to be a non-consensual common law lien[1] and voiding and releasing said lien pursuant to the Lien Protection Efficiency Act (LPEA), NMSA 1978, §§ 48-1A-1 to -9 (1999). [DS 3; RP 47-48] This Court issued a calendar notice proposing summary affirmance. Respondent filed a memorandum in opposition to this Court's notice of proposed disposition, which we have duly considered. Unpersuaded, we affirm.

**{2}** In our calendar notice, we proposed to hold that the district court did not err in determining that Respondent failed to meet her burden to show cause as to why the lien should not be stricken, and why she should not be liable for costs and fees under Section 48-1A-9. [CN 4] We based this proposed conclusion on the fact that Respondent does not claim that the lien in this case is statutorily or judicially created, but rather that the lien is "consensual." [CN 3] We noted that the only assertions to

---

[1]Under Section 48-1A-3(E) of the LPEA, a "'non[-]consensual common law lien' means a document, regardless of self-description, that purports to assert a lien against the assets, real or personal, of a person that: (1) is not expressly provided for by a specific state or federal statute; (2) does not depend upon the consent of the owner of the property affected or the existence of a contract for its existence; or (3) is not an equitable or constructive lien imposed by a court of competent jurisdiction[.]"

support Respondent's consensual lien argument were a series of inapposite definitions and "maxims of law." [CN 3] In her memorandum in opposition, Respondent has provided a more fully developed argument as to why the lien filed in this case should be considered to be consensual and thus outside of the definition of a non-consensual common law lien under the LPEA. However, we remain unconvinced that the lien is in fact consensual.

{3} First, Respondent contends that Petitioners' non-response to a series of mailings and filings she describes as an "administrative process" constitutes consent on the part of Petitioners to her commercial lien in the amount of two million eight hundred forty thousand dollars. [MIO 15-17; RP 11] Specifically, Respondent states that she provided Petitioners with an "Affidavit of Truth" via certified mail, [MIO 6-7; RP 12], containing facts that she alleges to be "violations of the constitution and various laws and statutes[.]" [MIO 7] After receiving no response from Petitioners, Respondent subsequently filed with the county clerk an "Affidavit of Non-Response" [RP 14] and an "Affidavit of Obligation Commercial Lien." [MIO 7; RP 4] The "Affidavit of Non-Response" states that "[a]ll terms, conditions, allegations, true bills, ledgers, etc., are now affirmed by [Petitioners] by *tacit procuration*[.]" [RP 14] Because this argument was not well developed in Respondent's docketing statement, we proposed to hold in our calendar notice that we were not persuaded by Respondent's bare assertion that a lien arising in such a manner is consensual in the absence of

3

supporting legal authority. [CN 4] Respondent acknowledges that our proposed disposition depended in large part on the lack of legal authority to support this contention, but continues to argue that "[t]he only legal authority she could show was evidence that Petitioners did not dispute the facts." [MIO 21] Similarly, Respondent claims that "the contract . . . was created via legitimate administrative process" [MIO 21] and states that the "lien is no different than any other contract create[d] by lack of response." [MIO 22] Respondent cites to a number of out-of-jurisdiction cases in her memorandum in opposition that do not support her legal theory described above. [MIO 15-17] "[C]ases are not authority for propositions not considered." *Fernandez v. Farmers Ins. Co. of Ariz.*, 1993-NMSC-035, ¶ 15, 115 N.M. 622, 857 P.2d 22 (internal quotation marks and citation omitted). Where a party cites no authority to support an argument, we may assume no such authority exists. *In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329. Therefore, we remain unconvinced that a lien arising in such a manner is consensual.

{4}     Second, Respondent contends that the lien is "based on non-judicial principals and is a commercial, common law remedy that is not intended to be adjudicated in a statutory court." [MIO 9] Respondent chose this remedy to cure alleged "violations of the constitution and various laws and statutes" by Petitioners. [MIO 7] Respondent's characterization of the lien as a remedy weighs squarely against her contention that the lien was consensual. The simple fact that Respondent may have

4

believed that she would be unsuccessful in a breach of contract claim [MIO 13] or tort action [MIO 14] does not somehow convert her lien into one based on consent. Thus, we hold that non-response to an individual's self-created "administrative process" does not constitute consent to having a lien placed on one's real or personal property.

{5}     Third, Respondent argues that the burden was on Petitioners to prove that the lien fell within the definition of a non-consensual common law lien under the LPEA and that Petitioners failed to do so. [MIO 8, 10] However, the very nature of the statutory scheme demonstrates that once Petitioners petitioned the district court for an order to show cause, the burden was on Respondent to show cause why the lien should not be stricken. *See* § 48-1A-8(A) ("A person whose real or personal property is subject to a recorded claim of a non[-]consensual common law lien and who believes the claim is invalid may petition the district court . . . for an order . . . directing the lien claimant to appear before the district court . . . and show cause, if any, why the . . . lien should not be stricken and other relief provided for by Section [48-1A-9] of the [LPEA] should not be granted."). We are not convinced otherwise by the cases cited by Respondent, both of which dealt with the burden of production in the summary judgment context. *See Fernandez*, 1993-NMSC-035, ¶ 15 ("[C]ases are not authority for propositions not considered." (internal quotation marks and citation omitted)).

{6}     Finally, Respondent's memorandum in opposition contends that she was entitled to a jury at the show cause hearing. [MIO 10] We note, however, that this

argument was not raised in Respondent's docketing statement, and she did not move to amend the docketing statement to add this issue. *See* Rule 12-208(F) NMRA (permitting the amendment of the docketing statement based upon good cause shown); *State v. Rael*, 1983-NMCA-081, ¶¶ 15-16, 100 N.M. 193, 668 P.2d 309 (setting out requirements for a successful motion to amend the docketing statement). The essential requirements to show good cause for our allowance of an amendment to an appellant's docketing statement are (1) the motion be timely, (2) the new issue sought to be raised was either properly preserved below or allowed to be raised for the first time on appeal, and (3) the issues raised are viable. *See State v. Moore*, 1989-NMCA-073, ¶ 42, 109 N.M. 119, 782 P.2d 91, *overruled on other grounds by State v. Salgado*, 1991-NMCA-044, ¶ 2, 112 N.M. 537, 817 P.2d 730.

{7} To the extent that we might construe the addition of this argument as a motion to amend the docketing statement, Respondent has failed to demonstrate that she meets the requirements for granting a motion to amend. First, Respondent's memorandum in opposition does not explain how this issue was preserved in the district court. *See Rael*, 1983-NMCA-081, ¶ 15 (requiring a motion to amend the docketing statement to include those issues sought to be added and "how they were preserved" or showing "why they did not have to be preserved"). There does not appear to be anything regarding a jury demand anywhere in the record proper. Second, we are not convinced that the right to a jury attaches to a show cause hearing, which

impacts the viability of this issue.  Therefore, because Respondent did not satisfy the requirements to amend the docketing statement, we decline to consider the issue of whether she was entitled to a jury at the show cause hearing.

**CONCLUSION**

{8}     For the reasons stated above, as well as those provided in our calendar notice, we affirm.

{9}     **IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Chief Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**J. MILES HANISEE, Judge**